UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X    Case No: 17-cv-09328 (VEC)
CRESENCIANO REYES, on Behalf of
Himself and All Others Similarly Situated,

                            Plaintiffs,

       -vs.-

GRACEFULLY, INC. d/b/a GRACEFULLY DELI
EAST VILLAGE, FOODEX LLC d/b/a GRACEFULLY
DELI UPPER WEST SIDE, FOODMOOD LLC d/b/a
GRACEFULLY, JOEL DANCYGER,
GRACE DANCYGER, and VICTUALS, LLC,

                          Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT OR STAY THE ACTION**

Amit Kumar, Esq.
LAW OFFICES OF WILLIAM CAFARO
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
Tel: (212) 583-7400
Fax: (212) 583-7401
E-mail: Akumar@CafaroEsq.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 3

STATEMENT OF FACTS .................................................................................................... 3

DEFENDANTS CANNOT ENFORCE THE ARBITRATION AGREEMENT .......................... 5

    The Parties in this Action Did Not Agree to Arbitrate ................................................. 7

THE ARBITRATION AGREEMENT IS UNCONSCIONABLE ................................................. 8

    The Agreement is Procedurally Unconscionable ........................................................... 9

    The Agreement is Substantively Unconscionable ....................................................... 10

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ............................................................... 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ................................. 6

*Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ...................................................... 6, 7

*Brady v. Williams Capital Group, L.P.*, 878 N.Y.S.2d 693, 700 (N.Y. App. Div., 1st Dep't 2009) ................................................................................................................................................. 11

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) ........................ 8, 9, 10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) ............................................... 7

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016) ............................................................................................................................. 12

*Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 553 (2d Cir. 2009) ............. 8

*EEOC v. Rappaport, Hertz, Cherson & Rosenthal, PC.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) ............................................................................................................................................ 11

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ................................................ 6, 8

*Fuller v. Guthrie,* 565 F.2d 259, 261 (2d Cir. 1977) ...................................................................... 6

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988) .......................... 9

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ............................................... 11

*Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) ................................................................................................................................ 6

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ................................................... 5

*In re Estate of Friedman*, 407 N.Y.S.2d 999 (2nd Dept. 1978) ..................................................... 9

*Manigault v. Macy's East, LLC,* 318 Fed. App'x 6, 7-8 (2d Cir. 2009) ......................................... 8

*McDonell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 831 (2d Cir. 1988) ...................................................................................................................................... 6

*Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d. Cir. 2000) ....................................................... 8

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ................................................... 7

*Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230-31 (3d Cir. 2012) ..................... 12

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) ................................ 11

*Resorb Networks, Inc. v. YouNow.com*, 51 Misc. 3d 975, 30 N.Y.S.3d 506, 510 (N.Y. Sup. Ct. 2016) ................................................................................................................................. 6

*Ross v. American Express Co.*, 478 F. 3d 96, 99 (2d Cir. 2007) ..................................................... 8

*See In re Estate of Friedman*, 407 N.Y.S.2d 999, 1008 (2d Dept. 1978) ..................................... 10

*See Nesbitt v. FCNH, Inc.*, 811 F.3d 37, 2016 U.S. App. LEXIS 38, at *7–8, 14–18 (10th Cir. 2016) ............................................................................................................................... 11

*Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987) ................................................ 12

*State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dept. 1983) .......................................................... 9

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) ................................ 12

*Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 U.S. Dist. LEXIS 132186, at *30 (S.D.N.Y. Sept. 19, 2014) ........................................................................................ 12

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580 (1960) ..................... 6

**Statutes**

29 U.S.C. §255 .............................................................................................................................. 10

9 U.S.C. §§ 1–16 ............................................................................................................................ 5

## PRELIMINARY STATEMENT

On November 28, 2017, Plaintiff Cresenciano Reyes ("Reyes" or "Plaintiff") filed a class and collective complaint against Gracefully, INC. d/b/a Gracefully Deli East Village, Foodex LLC d/b/a Gracefully Deli Upper West Side, Foodmood LLC d/b/a Gracefully, Joel Dancyger, Grace Dancyger, and Victuals, LLC, (collectively, "Defendants") seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  To evade the Court's jurisdiction and to avoid public litigation of its employment practices, Defendants are attempting to compel arbitration and dismiss the complaint on the basis of an unconscionable agreement signed by Mr. Reyes for a company which ***has not been sued*** in this action, Foodart LLC. (DE 19).  Simply put, Defendants ***cannot*** compel arbitration in this action based on a contract which specifically excludes them.  Moreover, even if the Defendants could enforce the arbitration agreement between dissolved, nonparty Foodart LLC and Mr. Reyes, the arbitration agreement is unconscionable and unenforceable.

## STATEMENT OF FACTS

Plaintiff, Cresenciano Reyes alleges that he was previously employed by Gracefully, Inc. d/b/a Gracefully Deli East Village, Foodex LLC d/b/a Gracefully Deli Upper West Side, Foodmood LLC d/b/a Gracefully, Joel Dancyger, Grace Dancyger, and Victuals, LLC who failed to properly pay him and similarly situated employees.  Mr. Reyes does not allege in any way that he was ever employed by a company called Foodart LLC.  *See generally* Ex[1]. "1".  Mr. Reyes has not alleged in any way that the Defendants and Foodart LLC constitute co-employers, joint employers, a single employer, a single integrated enterprise, joint ventures, each other's agent, alter egos, or that they share any similar relationship.  *Id.* Mr. Reyes does not allege that

---

[1] The "Ex" designations refer to the exhibits appended to the affirmation of Amit Kumar, Esq.

Defendants or Foodart LLC maintain any control over each other, maintain integrated operations, share common ownership or control, or common management or human resource functions. *Id*. In short, Mr. Reyes asserts no claims against Foodart LLC at all and he does not intend to assert any claim against Foodart LLC.

According to his best recollections, Mr. Reyes began working for the Defendants before the statutory period in September 2006. Ex. 2 at ¶ 2. Although there are several corporations involved Defendants are known to the public as "Gracefully". *Id*. at ¶ 4. Although he worked for Defendants in multiple locations, when he started he worked for defendants he primarily worked out of the 28 Avenue A, New York, NY 10009 location ("Avenue A Location"). *Id*. at ¶ 5. He worked for Defendants from this location until in or about November 2014 when he began working for Defendants primarily in their 101 West End Avenue, New York, NY 10023 location ("West End Ave Location"). *Id*. at ¶6. According to a search of the New York State Liquor Authority, Division of Alcoholic Beverage Control, during part of the time Mr. Reyes worked for the Defendants at the Avenue A Location, Gracefully Inc. owned the liquor license for the location. Ex. "3". Throughout his employment with the Defendants their usual practice was to issue a check to Mr. Reyes, have him endorse the check and then give him cash. Ex. 2 at ¶ 7. As such, Plaintiff is not in possession of any of his paystubs. *See*, *id*. Approximately four years *after* Mr. Reyes began working for the Defendants in this action, Foodart LLC was created under the laws of the state of New York. Ex. 4. Five years later, two years before this litigation began, on May 19, 2015, Foodart LLC was completely dissolved. *Id*.

In August 2013 Mr. Reyes was forced to sign the Foodart LLC arbitration agreement ("The Arbitration Agreement"). Mr. Reyes' native language is Spanish, and he is unable to read or understand English. Ex. 2 at ¶ 8. In August 2013 he was presented with The Arbitration

Agreement by the Defendants. *Id*. at ¶ 10. The Arbitration Agreement is completely in English. Ex. "5". The Defendants told Mr. Reyes that he had to sign the agreement immediately, without first having it translated to him. Ex. 2 at ¶ 13. He was not allowed to take it home to review it himself. *Id*. at ¶¶ 13-15. He was not allowed to ask an attorney, a friend, or any educated person to review the contents of the agreement in order to explain it to him. *Id*. Moreover, none of the Defendants or any of the supervisors attempted to explain the contents of the arbitration agreement to Mr. Reyes. *Id*. at ¶13  Lastly, it was made clear to Mr. Reyes that if he did not sign the agreement he would be fired. *Id.*

To the extent that The Arbitration Agreement is not unconscionable, it only requires arbitration between Mr. Reyes and Foodart LLC, not arbitration between Mr. Reyes and any of the Defendants. Ex. 5 p.1. The Arbitration Agreement, by its own terms, does not speak to any other businesses, owners, supervisors, directors, agents, successors, assigns, or agents. *Id*. Moreover, The Arbitration Agreement contains a clause stating that agreement is the "entire agreement between the parties" and that the agreement may only be modified in writing signed "by the party against whom enforcement of such modification… is sought". *Id*. at ¶7. Since Foodart LLC is not a party to this action and no other entity is allowed to enforce the agreement, the Defendants may not invoke the arbitration agreement.

## **DEFENDANTS CANNOT ENFORCE THE ARBITRATION AGREEMENT**

The Federal Arbitration Act ("FAA") reflects the fundamental principle that arbitration is a matter of contract. 9 U.S.C. §§ 1–16; *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574,

580 (1960). The purpose of the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so." *McDonell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 831 (2d Cir. 1988) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12, 87 S. Ct. 1801 (1967)). Thus, although federal policy favors arbitration, "federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its extended scope." *Fuller v. Guthrie,* 565 F.2d 259, 261 (2d Cir. 1977). Instead, contracts providing for arbitration must "be carefully construed." *United Steelworkers of Am.,* 363 U.S. at 590. Moreover, a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted).

In adjudicating a motion to compel arbitration, "a court must begin by answering two questions: '(1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims.'" *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (quoting *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999)). "The party seeking arbitration has the burden of establishing an agreement to arbitrate." *Resorb Networks, Inc. v. YouNow.com*, 51 Misc. 3d 975, 30 N.Y.S.3d 506, 510 (N.Y. Sup. Ct. 2016) (citing *Seneca Ins. Co. v. Secure-Southwest Brokerage*, 294 A.D.2d 211, 741 N.Y.S.2d 690 (1st Dep't 2002); *Allstate Ins. Co. v. Roseboro*, 667 N.Y.S.2d 914 (2d Dep't 1998)). Fundamentally, "arbitration is simply a matter of contract between the parties." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

For motions to compel arbitration, the court applies a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

Therefore, courts must "consider all relevant, admissible evidence submitted by the parties." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). In considering the evidence, "the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). If there is a genuine dispute of material fact regarding the making of an agreement to arbitrate, then a trial is necessary. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The Parties in this Action Did Not Agree to Arbitrate

Defendants fail to show *any* evidence that Mr. Reyes agreed to arbitrate any claims with any of them. The only evidence which the Defendants have produced in favor of their motion is The Arbitration Agreement which states that it is an agreement between "Foodart LLC, having a place of business located at 08 Ave A NYC NY 10009" and Mr. Reyes. Ex. 5, p. 1. The Complaint does not make any allegations against Foodart LLC, the only entity to The Arbitration Agreement. *See generally*, Ex. 1. For part of the time Mr. Reyes worked at the Avenue A Location Gracefully Inc. was the holder of the liquor license. Ex. 3. The Defendants hold themselves out to the public as "Gracefully". Ex. 2 at ¶ 2. The company Foodart was not created until several years after defendants admitted Mr. Reyes began working for them and was dissolved several years before Mr. Reyes stopped working for the Defendants. *Compare*, Braverman Decl, D.E. 21, at ¶ 3 ("Plaintiff worked continuously for the Gracefully Entities for the period of April 2007 through in or around August 2017") *with* Ex. 4 (Showing a Department of State filing date of April 16, 2010 and a dissolution date of May 19, 2015). The Arbitration Agreement itself states that it is by "Foodart LLC, having a place of business located at 08 Ave A 10009". Ex. 5, p 1. The Avenue A Location is *28* Avenue A not *08* Avenue A. Ex. 2 at ¶ 5.

7

...

As Defendants have failed to provide *any* evidence that Mr. Reyes has agreed to arbitrate any claims with them, the Defendants motion must be denied.

## THE ARBITRATION AGREEMENT IS UNCONSCIONABLE

A party seeking to compel arbitration must establish the existence of an agreement to arbitrate under ordinary principles of contract law. *See, e.g.*, *Ross v. American Express Co.*, 478 F. 3d 96, 99 (2d Cir. 2007) (citing *Thomson-CSF, S.A. v. American Arb. Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995)). Whether the parties agreed to arbitrate a certain matter is governed by state-law principles regarding contract formation. *First Options of Chicago*, 514 U.S at 944; *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d. Cir. 2000). "It is 'well settled' under New York law that arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'"*Manigault v. Macy's East, LLC,* 318 Fed. App'x 6, 7-8 (2d Cir. 2009) *(quoting Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144, 893 N.E.2d 807, 863 N.Y.S.2d 391 (N.Y. 2008)). Where there was no "meeting of the minds," an arbitration agreement cannot be enforced. *Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 553 (2d Cir. 2009).

"An agreement is unenforceable when it is unconscionable." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988)). Stated another way, "a contract is unconscionable where there is 'an absence of meaningful choice' on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id*. at 382 (internal citations omitted).

Where a court examines whether a contract is unconscionable, a "flexible" approach is utilized, examining "all the facts and circumstances of a particular case." *In re Estate of*

8

*Friedman*, 407 N.Y.S.2d 999 (2nd Dept. 1978). In examining unconscionability, procedural and substantive elements are required. *See Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988). Although both substantive and procedural unconscionability should be present for the court to refuse to enforce an arbitration agreement, they need not be present in the same degree, rather "it can be said that procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dept. 1983).

The Agreement is Procedurally Unconscionable

"The test for procedural inadequacy in forming a contract is whether, in light of all the facts and circumstances, a party lacked 'a meaningful choice' in deciding whether to sign the contract." *Brennan*, 198 F. Supp. 2d at 382 (citing *Desiderio v. National Ass'n of Sec. Dealers*, 191 F.3d 198, 207 (2d Cir. 1999), *cert. denied*, 121 S. Ct. 756 (2001). "While inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable, such inequality, when coupled with high pressure tactics that coerce an employee's acceptance of onerous terms, may be sufficient to show that an employee lacked meaningful choice." *Brennan*, 198 F. Supp. 2d at 382 (internal citations omitted).

Here, the circumstances surrounding the execution of The Arbitration Agreement show that Mr. Reyes had no meaningful choice. No one gave Mr. Reyes The Arbitration Agreement in Spanish, his native language, even though they were aware he cannot read or understand English. Ex. 2 at ¶¶ 8, 13. He was not given an opportunity to review the document, was not given the opportunity to take the document home to have it read to him by someone with knowledge, and

was required to sign The Arbitration Agreement "immediately". *Id*. at ¶¶ 13, 14, 15. Lastly, it was made clear to Mr. Reyes that if he did not sign the agreement immediately, he would be fired. *Id*. at 13. These high-pressure tactics, not allowing the Plaintiff to review the agreement, and failing to supply a translated copy, along with the inequality of bargaining power, show a lack of meaningful choice for Mr. Reyes.

The Agreement is Substantively Unconscionable

"A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed." *Brennan*, 198 F. Supp. 2d at 382 (citing *Desiderio*, 191 F.3d at 207). The substantive elements of unconscionability can be found in the language of the contract. *See In re Estate of Friedman*, 407 N.Y.S.2d 999, 1008 (2d Dept. 1978).

First, The Arbitration Agreement is a substantive waiver of statutory rights. To vindicate his claims Mr. Reyes was required to present his claim, in writing, to "Foodart LLC at 08 Ave A NYC, 10009" within sixty days of the date of occurrence. Ex. 5 at ¶4. The failure to comply with this strict deadline results in a "forfeiture of [Mr. Reyes'] claim." *Id*. Here, the Plaintiff has filed individual as well as class and collective claims under the Fair Labor Standards Act and the New York Labor Law. The statute of limitations for the federal causes of action is two years, or three years when the Plaintiff proves willfulness. 29 U.S.C. §255. Where, as here, Foodart LLC has shoehorned in a substantive waiver of federal statutory rights by requiring Mr. Reyes and others who may have signed similar agreements to give notice within **60 days** or waive their claims, the provision is unconscionable. *See, 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ("a substantive waiver of federally protected civil rights will not be upheld" in an arbitration agreement.); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir.

2010) (A federal court "will compel arbitration of a statutory claim only if it is clear that the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, such that the statute under which its claims are brought will continue to serve both its remedial and deterrent function.").

Second, The Arbitration Agreement requires Mr. Reyes to pay exorbitant AAA administrative fees and half the costs of the arbitrator. Ex. 5 at ¶ 5. The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). If compelled to arbitrate this claim, the expenses for which Mr. Reyes will be responsible, not only for himself, but as a class representative would be astronomical. He would be responsible for half of the preliminary fee of $3,500.00 plus arbitrator fees. *See* Ex. 6, p. 23 (The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules."); Ex. 7 (11)(a) Due to the nature of the case, and depending on the arbitrator chosen, half of the arbitrator's fees is estimated to be between $39,000 and $70,200. Kumar Affirm. at ¶¶ 9-11. These AAA administrative fees and arbitrator fees are prohibitively expensive, especially when compared to the federal district court filing fee. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 37, 2016 U.S. App. LEXIS 38, at *7–8, 14–18 (10th Cir. 2016) (arbitration fees between $2,320 and $12,487 found prohibitively expensive); *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, PC.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) (arbitration costs "in the range of $6,000 to $11,200 . . . would be prohibitively expensive" as compared to the filing fee in federal court); *Brady v. Williams Capital Group, L.P.*, 878 N.Y.S.2d 693, 700 (N.Y. App. Div., 1st Dep't 2009) (arbitration costs of $21,150 found

11

prohibitively expensive, even when the plaintiff had an earning history "ranging from $100,000 to $405,000" over a five-year period). These costs are especially onerous on Mr. Reyes who only grosses approximately 500.00 per week. Ex. 2 at ¶ 16.

Moreover, the wording of this cost splitting provision could allow for an arbitrator to preclude Plaintiffs from recovering their reasonable attorney's fees and costs should they prevail on their claims. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [statute]." *Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes*." Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 U.S. Dist. LEXIS 132186, at *30 (S.D.N.Y. Sept. 19, 2014). Accordingly, courts have deemed bear-your-own-cost provisions unenforceable as applied to FLSA claims. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230-31 (3d Cir. 2012) ("Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy."); *c.f. Cheeks*, 796 F.3d at 203 (employees may not waive the right to recover liquidated damages due under the FLSA).

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny the Defendants' motion in full.


Dated:  New York, New York
        January 24, 2018

                                                               /s/ Amit Kumar
                                                           Amit Kumar, Esq (AK 0822)
                                                           LAW OFFICES OF WILLIAM CAFARO
                                                           *Attorneys for Plaintiff*
                                                           108 West 39th Street, Suite 602
                                                           New York, New York 10018
                                                           Tel: (212) 583-7400
                                                           Fax: (212) 583-7401
                                                           E-mail:Akumar@CafaroEsq.com