UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CRESENCIANO REYES, on behalf of himself and :
all others similarly situated, :
                                       Plaintiff, :
                                        :
                     -against- :
                                        :
GRACEFULLY, INC. (d/b/a Gracefully Deli East :
Village), FOODEX LLC (d/b/a Gracefully Deli :
Upper West Side), FOODMOOD LLC (d/b/a :
Gracefully), JOEL DANCYGER, GRACE :
DANCYGER, and VICTUALS, LLC, :
                                        :
                                Defendants. :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/11/2018

17-CV-9328 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Cresenciano Reyes brings this action against his former employer alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq. See* Compl., Dkt. 1. Defendants move to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to dismiss or stay the action. *See* Notice of Mot., Dkt. 19. For the following reasons, Defendants' motion to compel is GRANTED, but the 60-day notification provision in the parties' arbitration agreement, Braverman Decl., Ex. A, ¶ 4, is severed. This action is STAYED pending arbitration.

## BACKGROUND

Defendants Gracefully, Inc., Foodex LLC ("Foodex"), and Foodmood LLC ("Foodmood") are a group of entities that own grocery stores under the trade name "Gracefully" (the "Gracefully Defendants"). *See* Reyes Decl. ¶ 4; Dancyger Decl. ¶ 4.[1] Defendant Joel

---

[1] The Court will refer to the parties' filings with the following abbreviations: the Declaration of Marc D. Braverman, Esq. in Support of Defendants' Motion to Compel Arbitration, Dkt. 21, as "Braverman Decl."; the Declaration of Amit Kumar, Dkt. 24, submitted as part of Plaintiff's opposition to Defendants' motion, as "Kumar Decl."; the Declaration of Cresenciano Reyes, Dkt. 24, Ex. 2, submitted as part of Plaintiff's opposition to

Dancyger ("Mr. Dancyger") is the principal of these entities. *See* Dancyger Decl. ¶¶ 1–2. Plaintiff alleges that Victuals, LLC, Grace Dancyger, and Mr. Dancyger jointly own and operate the Gracefully Defendants, making them joint employers under the wage-and-hour laws. Compl. ¶¶ 2–5, 20–27.

Plaintiff began to work for Defendants sometime between September 2006 and April 2007.[2] *See* Reyes Decl. ¶ 2; Dancyger Decl. ¶ 6. At that time, he worked at a grocery store located in Manhattan at 28 Avenue A, which was then operated by Gracefully, Inc. Reyes Decl. ¶ 5; *id.* Ex. 3; Dancyger Decl. ¶¶ 6–7. Beginning in February 2011, Gracefully, Inc. ceased operating the store, and non-party Foodart LLC ("Foodart"), another entity owned by Mr. Dancyger, took over. Dancyger Decl. ¶ 10.

Plaintiff executed an Arbitration Agreement with Foodart on August 12, 2013. *See* Braverman Decl., Ex. A. The Agreement states that "all claims resulting from [Plaintiff's] employment," including federal, state, and local wage-and-hour claims, must be submitted for arbitration to the American Arbitration Association ("AAA") as "the sole and exclusive procedure[]" to resolve the disputes. *Id.* ¶¶ 1, 3, 3(xv)–(xvi), 5. The Agreement also obligates Plaintiff to submit any claim to Foodart "within sixty (60) days of the date of occurrence of the alleged event giving rise to the claim," or else the claim is forfeited. *Id.* ¶ 4. The Agreement also states that the costs of arbitration are to be shared "equally" between Plaintiff and Foodart or "as governed by" the AAA's National Rules for the Resolution of Employment Disputes. *Id.*

---

Defendants' motion, as "Reyes Decl."; and the Declaration of Joel Dancyger in Further Support of Defendants' Motion to Compel Arbitration, Dkt. 27, as "Dancyger Decl."

[2] The parties dispute the exact time that Plaintiff began working for Defendants. *See* Reyes Decl. ¶ 2; Dancyger Decl. ¶ 6.

2

¶ 5. Finally, the Agreement represents that Plaintiff signed it "knowingly and voluntarily" and that Plaintiff had the right to consult with "a person of [his] choosing" prior to signing. *Id.* ¶ 10.

The parties dispute the circumstances surrounding Plaintiff's execution of the Arbitration Agreement. According to Plaintiff, his manager told him that he had to sign the Agreement "immediately" or else he "could not work." Reyes Decl. ¶ 13. Plaintiff alleges that the manager did not allow him to get the document translated, even though Plaintiff is unable to read or understand English. *Id.* ¶¶ 8, 13. For these reasons, Plaintiff alleges, he never had the opportunity to read the Agreement or to understand its contents. *Id.* ¶¶ 13–15. Defendants paint a different picture. According to Mr. Dancyger, all employees, including Plaintiff, "were urged to read the Arbitration Agreement in its entirety" and "were told that they did not have to immediately sign" it. Dancyger Decl. ¶¶ 16–17. Mr. Dancyger also alleges that no one threatened Plaintiff, or any other employee, with termination if he did not sign the Agreement. *Id.* ¶ 21. Finally, Mr. Dancyger alleges that Plaintiff regularly communicated in English throughout his employment. *Id.* ¶ 23.

In November 2014, a little more than a year after Plaintiff signed the Arbitration Agreement, the 28 Avenue A store closed. Dancyger Decl. ¶ 11. Plaintiff was transferred to another "Gracefully" location, a store owned by Mr. Dancyger and operated by Foodex at 101 West End Avenue in Manhattan. Reyes Decl. ¶ 6; Dancyger Decl. ¶ 13. Plaintiff worked for Foodex at the West End Avenue location until he was terminated in August 2017. Dancyger Decl. ¶ 14.

Plaintiff filed the instant lawsuit on November 28, 2017. *See* Compl. Plaintiff alleges that Defendants failed to pay him required overtime and spread-of-hours compensation and that

Defendants failed to provide him required wage notices and wage statements. *Id.* ¶¶ 134–135, 146–147.

## DISCUSSION

I.  **Defendants' Motion to Compel Arbitration Is Granted, But Portions of the Arbitration Agreement Are Severed**

　　A.　**Legal Standard**

Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "In resolving a claim that an action must be directed to arbitration under an arbitration agreement, [a] [c]ourt must determine: (i) whether the parties entered into an agreement to arbitrate; (ii) if so, the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Arnold v. D'Amato*, No. 14-CV-6457 (PAE), 2015 WL 4503533, at *5 (S.D.N.Y. July 23, 2015) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)).

In deciding a motion to compel arbitration under the FAA, the Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). A motion to compel arbitration may be granted "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013). "All facts, inferences, and ambiguities must be viewed in a light most favorable to the nonmovant." *Alexander &*

4

*Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. The Parties Agreed to Arbitrate

#### 1. The Arbitration Agreement is Enforceable

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). "Under New York law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (citing *Level Exp. Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953)), *aff'd*, 659 F. App'x 40 (2d Cir. 2016); *see also Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678 (CM), 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015).

Here, Plaintiff signed the Arbitration Agreement, creating a presumption that he agreed to arbitration.[3] *See* Braverman Decl., Ex. A, at 5. Plaintiff's attacks on the Agreement focus on the alleged facts that he (a) was not given a chance to examine the Agreement fully, (b) cannot read or understand English, and (c) was threatened with termination if he refused to sign. *See* Pl.'s Mem. Of Law at 9–10, Dkt. 25; Reyes Decl. ¶¶ 13–15.

That Plaintiff allegedly did not have time to examine the Agreement does not render it unenforceable. Under New York law, a party who signs a contract is bound by its provisions unless he can show "special circumstances," such as fraud, duress, coercion, or

---

[3] Oddly, it does not appear that Defendants signed the Arbitration Agreement. *See* Braverman Decl., Ex. A, at 5. In the signature block, Defendants simply wrote "Foodart LLC" next to a blank line marked "Company," without indicating who was signing on behalf of the company. *Id.* Because Foodart LLC is not the party seeking to avoid arbitration, this fact is immaterial. *See Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 641 F. Supp. 2d 196, 207 (S.D.N.Y. 2009). Additionally, because Foodart LLC "made no objections" to the terms of the Agreement and "proceeded to benefit from it," it has "manifest[ed] an intention to agree to the unsigned agreement," thus creating an enforceable contract under New York law. *Id.* (quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1064 (2d Cir. 1993)).

misrepresentation, that "relieve him of such an obligation." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 328, 331 (S.D.N.Y. 2014) (alteration omitted) (collecting cases); *see also Isaacs v. OCE Bus. Servs, Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). In *Marciano*, the plaintiff sought to avoid arbitration on the grounds that her employer "rushed [her]" into signing the arbitration agreement, "did not show [her] the page containing arbitration language," and "refused to give [her] the page to read on [her] own." 14 F. Supp. 3d at 328 (alterations in original). Judge Karas exhaustively reviewed New York contract law and found that these facts failed to state a claim for fraud, duress, coercion, or any other doctrine that could void the contract. *Id.* at 331–34. For the same reasons, Plaintiff's argument fails. While Plaintiff's manager told him to sign the Agreement "immediately," there is no indication that Plaintiff objected to being rushed, asked for more time to read the Agreement, or otherwise made a reasonable effort to understand what he was signing. Reyes Decl. ¶ 13; *see also Marciano*, 14 F. Supp. 3d at 334 (even if plaintiff's employer did "rush her, she still had to satisfy her obligation to read the document before she signed it" (alterations and internal quotation marks omitted)); *Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1273 (S.D.N.Y. 1995) (rejecting party's argument that he did not have sufficient time to review a contract because he "could have simply informed [his counterparty] that he needed more time").

Plaintiff's alleged inability to read or understand English also does not make the Agreement unenforceable. "An inability to understand the English language, without more, is insufficient to avoid [the] general rule" that "a party who executes a contract is considered bound by the terms of that contract." *Victorio*, 2015 WL 2152703, at *11; *see also Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 (2d Cir. 2017), *petition for cert. filed*, No. 17-1494 (Apr. 27, 2018); *Molina v. Coca-Cola Enters., Inc.*, No. 08-CV-6370, 2009 WL 1606433, at *8

(W.D.N.Y. June 8, 2009) (collecting cases). The employee has a duty "of making a reasonable effort to have the document explained to him." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010). As the Court has discussed, there is no indication that Plaintiff fulfilled that duty.

Finally, Plaintiff's allegation that he was threatened with termination also does not invalidate the Agreement. "It is well-settled . . . that conditioning employment on the acceptance of an agreement to arbitrate disputes . . . is not itself unlawfully coercive." *Williams v. Parkell Prods., Inc.*, 91 F. App'x 707, 708–09 (2d Cir. 2003) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123–24 (2001); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204–05 (2d Cir. 1999)); *see also Ragone*, 595 F.3d at 121 ("[T]he FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration.").

For all these reasons, the Court finds that Plaintiff's Arbitration Agreement is enforceable.[4]

### 2. Plaintiff is Equitably Estopped from Asserting that the Arbitration Agreement Does Not Apply to His Claims Against Defendants

Plaintiff next argues that even if the Arbitration Agreement is enforceable generally, it does not apply to his claims against the Defendants in this action, because the Agreement is between Plaintiff and a non-party, Foodart LLC. Pl.'s Mem. of Law at 4, 7–8. This argument fails.

---

[4] Defendants dispute that they rushed Plaintiff into signing the Agreement, that they threatened Plaintiff with termination if he did not sign it, and that Plaintiff is unable to understand English. *See* Dancyger Decl. ¶¶ 16–23. Because Plaintiff's allegations, even taken as true, do not render the Agreement unenforceable, the Court does not need to resolve this factual dispute.

"Courts have 'recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel.'" *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (quoting *Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007)). "Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . and the issues that had arisen' among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Ragone*, 595 F.3d at 126–27 (omission in original) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)); *see also Rodriguez-Depena*, 877 F.3d at 124. "Courts in this district have distilled these requirements and established a two-part 'intertwinedness' test, under which they examine whether: (1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 476 (internal quotation marks omitted) (citing *Lismore v. Societe Generale Energy Corp.*, No. 11-CV-6705 (AJN), 2012 WL 3577833, at *7 (S.D.N.Y. Aug. 17, 2012)). Under the first prong, a court looks to the facts of the plaintiff's dispute and asks whether they arise out of the same subject matter as disputes that the plaintiff agreed to arbitrate. *See Ragone*, 595 F.3d at 127–28 (asking whether the disputes contemplated by the agreement were "factually intertwined with the dispute between the [plaintiff] and the [non-signatory defendants]"); *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 476. Under the second prong, a court asks whether the relationship between the signatory and the non-signatories is sufficiently close to "support[] the conclusion that [the signatory] had consented to extend its agreement to the [non-signatory], or, otherwise

put, [make] it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 479 (alterations in original) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008)).

Applying the first prong, the claims in the instant lawsuit are within the subject matter of disputes that are subject to the Arbitration Agreement. In the Agreement, Plaintiff agreed to arbitrate "all disputes between" Foodart LLC and himself, including FLSA claims, NYLL claims, and all other claims "relating to [his] employment." Braverman Decl., Ex. A, ¶¶ 1, 3(xv)–(xvi). The claims at issue here fall squarely within that definition.

Applying the second prong, the relationship between Foodart and the Defendants is sufficiently close to invoke equitable estoppel. The undisputed evidence shows that Foodart was the corporate successor to Defendant Gracefully, Inc.; both were corporate owners of the grocery store at 28 Avenue A. *See* Dancyger Decl. ¶¶ 10–11. Plaintiff worked at 28 Avenue A without interruption during this change in ownership structure. *See* Reyes Decl. ¶¶ 5–6; Dancyger Decl. ¶¶ 9–12; Dancyger Decl., Ex. A (copy of a paycheck from Foodart to Plaintiff). And Foodart shared the same owner (Mr. Dancyger) and business name ("Gracefully") as Defendant Foodex, the entity that owns the grocery store at which Plaintiff worked after November 2014. *See* Kumar Decl., Ex. 4 (record of Foodart LLC's incorporation papers, listing Mr. Dancyger as the corporation's contact for service of process); Reyes Decl. ¶¶ 4–6; Dancyger Decl. ¶¶ 1–2, 5(b), 13–14. In sum, Plaintiff worked interchangeably between Foodart and the other Gracefully entities without differentiating among them. By signing the Arbitration Agreement with Foodart, therefore, Plaintiff impliedly agreed to arbitrate claims against *all* of the Gracefully entities and their owners—that is, against all of the Defendants in this action. Plaintiff is therefore equitably

estopped from claiming that he did not agree to arbitrate claims against the Defendants. *See Ragone*, 595 F.3d at 127 (affirming the use of equitable estoppel because "when [Plaintiff] was hired by [the agreement's signatory], she understood [the non-signatory] to be, to a considerable extent, her co-employer"); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 281 (2d Cir. 2003) (applying equitable estoppel "because of the close corporate and operational relationship between" a signatory and a non-signatory); *Victorio*, 2015 WL 2152703, at *16 (by signing an agreement to arbitrate with a restaurant, plaintiff impliedly consented to arbitrate claims against the restaurant's sole owner, its manager, and other restaurants that the owner controlled through various corporate entities); *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013) (relationships that justify equitable estoppel have been found "where the non-signatory is a parent company, corporate successor, guarantor, or corporate affiliate of a signatory" (collecting cases)).[5]

For all these reasons, the Arbitration Agreement applies to claims against the Defendants in this action.

### C. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

Federal courts must "construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 19 (2d Cir. 1995). While "federal law does not

---

[5] Plaintiff argues that the Arbitration Agreement states that Foodart LLC is located at "08 Avenue A," whereas Plaintiff worked at 28 Avenue A. Pl.'s Mem. of Law at 7–8; Reyes Decl. ¶ 12. This argument is frivolous. In light of the incorporation papers showing that Mr. Dancyger owned Foodart, Mr. Dancyger's allegation that he owned a grocery store at 28 Avenue A, and Plaintiff's statement that he worked at a Dancyger-controlled entity at 28 Avenue A, the address in the Agreement is clearly either a misprint or simply the result of sloppy handwriting.

Plaintiff also moved to file a sur-reply, arguing that Defendants improperly raised the doctrine of equitable estoppel for the first time in their reply brief. *See* Pl.'s Ltr. at 1, Dkt. 28. The motion is denied. Defendants' estoppel argument was a direct response to Plaintiff's claim that he agreed to arbitrate claims only with Foodart and not with Defendants. *See* Pl.'s Mem. of Law at 7. Even if the Court were to allow the sur-reply proffered by Plaintiff to be filed, it would not change the Court's conclusion. Plaintiff alleges that Defendants created Foodart LLC "to encapsulate the other entities from liability from known wage abuses." *See* Pl.'s Ltr., Ex. 1 at 3. Plaintiff does not support this assertion with any evidence. *Id.* Even if Defendants violated the wage-and-hour laws, there is no evidence that they created Foodart in order to shield them from liability for those violations.

require parties to arbitrate when they have not agreed to do so," *id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *id.* (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24–25). Courts "will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991)).

Here, Plaintiff brings claims for unpaid overtime under the FLSA and the NYLL, along with claims for spread-of-hours pay, failure to provide wage statements, and failure to provide wage notices under the NYLL. *See* Compl. ¶¶ 148–172. Those claims plainly fall within the scope of the Arbitration Agreement, which covered "[c]laims arising under the Fair Labor Standards Act" and "the New York Labor Law." Braverman Decl., Ex. A ¶¶ 3(xv)–(xvi). That the Agreement was executed after Plaintiff's employment began does not alter the Court's analysis because "an arbitration provision may cover claims that accrued prior to the execution of the agreement." *Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) (collecting cases).

### D. The Agreement's 60-Day Notification Provision Is Severed Because It Would Prevent Effective Vindication of Plaintiff's Statutory Rights

#### 1. Legal Standards

The next question for the Court is whether Congress intended the claims at issue to be non-arbitrable. That question must be addressed in two parts. First, has the FAA's "mandate" to construe arbitration agreements liberally "been 'overridden by a contrary congressional command'"? *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295–96 (2d Cir. 2013) (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). Put differently, has Congress

"evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue"? *Rodriguez-Depena*, 877 F.3d at 123 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Second, would the arbitration agreement "prevent the 'effective vindication' of a federal statutory right"? *Sutherland*, 726 F.3d at 298 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013)). A court may "invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" *Italian Colors*, 570 U.S. at 235 (alteration and omission in original) (emphasis omitted) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Under either of these two tests, if a court finds that a provision in an arbitration agreement would contravene congressional intent, "the appropriate remedy . . . is to sever the improper provision . . . rather than void the entire agreement." *Ragone*, 595 F.3d at 121; *see also Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 301–02 (E.D.N.Y. 2018).

### 2. No Contrary Congressional Commands Apply Here

The Court finds no "contrary congressional commands" in the FLSA that would prevent enforcement of the Arbitration Agreement. The Second Circuit has held that nothing in the FLSA evinces an intent from Congress to exempt claims brought under it from the broad policies of the FAA. *See Rodriguez-Depena*, 877 F.3d at 123; *Sutherland*, 726 F.3d at 295; *see also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 540 (E.D.N.Y. 2016) ("The decisions of the Supreme Court, as well as of courts both within and outside this circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced in accordance with the FAA.").[6]

---

[6] The Second Circuit has also held that the fact that FLSA claims are arbitrable means that NYLL claims brought with an FLSA claim are also arbitrable. *See Sutherland*, 726 F.3d at 292 n.1 ("[I]n light of our conclusion

12

### 3. The Court Severs the Notification Requirement from the Arbitration Agreement

Although there is no express statutory prohibition against requiring an employee to arbitrate wage-and hour-disputes, the Arbitration Agreement's notification period could prevent "effective vindication" of Plaintiff's statutory rights. The Agreement states that all claims must be brought within 60 days "of the alleged event giving rise to the claim[s]," or else those claims are forfeited. Braverman Decl., Ex. A, ¶ 4. Under the FLSA, a plaintiff can recover damages "as far back as the statute of limitations reaches," which is two or, if the violation is willful, three years. *Castellanos*, 291 F. Supp. 3d at 299–300 (citing *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 733 F.3d 192, 198 (2d Cir. 2013)). A limitations period shortened by an arbitration agreement, therefore, raises the danger that a plaintiff would be unable to recover the full amount of damages that the FLSA contemplates. For that reason, "federal courts have routinely concluded that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable." *Id.* (collecting cases and invalidating a 180-day notification period in an arbitration agreement); *see also Ragone*, 595 F.3d at 125–26 (stating that a 90-day notification period in an arbitration agreement would likely have been unenforceable had the defendants not waived enforcement of it).

The Court agrees with those courts and holds that the paltry 60-day notification period in the Arbitration Agreement would prevent the "effective vindication" of Plaintiff's "right to pursue statutory remedies" under the FLSA. *Italian Colors*, 570 U.S. at 235. That provision is, therefore, severed from the Agreement. The statute of limitations period applicable to this dispute will be for the arbitrator to decide. If the arbitrator fails to "effectively vindicate"

---

that [the plaintiff's] FLSA claim must proceed individually in arbitration pursuant to the Federal Arbitration Act, so too must her NYLL claim." (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011)).

Plaintiff's statutory rights, Plaintiff may raise the issue with this Court when either party seeks to enforce the arbitral award. *See Howard v. Anderson*, 36 F. Supp. 2d 183, 187 (S.D.N.Y. 1999).

### 4. The Court Will Not Sever the Agreement's Cost-Sharing Provision

The cost-sharing provision in the Arbitration Agreement raises similar concerns, but the Court will not sever it at this time. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). If the likelihood that the moving party would incur such costs is "speculative" or ambiguous, the party has not satisfied its burden of invalidating the cost-sharing provision. *Id.* at 91; *see also Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293–94 (S.D.N.Y. 2002).

Here, the Arbitration Agreement states that "[c]osts for the arbitration shall be paid equally by the Employee and the Company or as governed by the [American Arbitration Association's] rules." Braverman Decl., Ex. A, ¶ 5. Plaintiff argues that the AAA rules would require him to pay a $3,500 administrative filing fee plus half of the arbitrator's compensation. Pl.'s Mem. of Law at 11. In support, Plaintiff cites to the AAA's National Rules for the Resolution of Employment Disputes and the AAA's Supplementary Rules for Class Arbitrations. *See* Pl.'s Mem. of Law at 11 (citing Kumar Decl., Exs. 6–7). Plaintiff then estimates that the arbitrator's compensation would range from $78,000 to $140,000, resulting in a cost to Plaintiff of between $39,000 and $70,200. Pl.'s Mem. of Law at 11; Kumar Decl. ¶ 11. In response, Defendant cites the AAA's Employment/Workplace Fee Schedule, which states that an individual employee's filing fee is capped at $300 and that the costs of the arbitrator's compensation are borne by the employer. Defs.' Reply Mem. of Law at 7, Dkt. 26 (citing

*Employment Arbitration Under AAA Administration*, American Arbitration Association, https://www.adr.org/employment).

If it were clear that Plaintiff is correct about the cost to him of arbitration, the Court would sever the cost-sharing provision and require Defendants either to proceed in federal court or to bear the entire cost of the arbitration. It is not at all clear, however, that Plaintiff is correct because the AAA rules are ambiguous on this issue. The AAA's National Rules for the Resolution of Employment Disputes, which Plaintiff cites, contain two different fee schedules, one for "disputes arising out of employer-promulgated plans" and one for "disputes arising out of individually-negotiated employment agreements and contracts." Kumar Decl., Ex. 6, at 20–21. The former caps employees' filing fees at $125, whereas the latter sets filing fees based on the amount of the employee's claim. *Id.* The record is unclear as to which schedule would apply in this case, if either. As one prior court has noted, "[t]he AAA Rules provide no guidance to differentiate between the two types of plans, nor do most of the cases that have encountered these types of arbitration agreements." *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) (collecting cases). Additionally, the record is unclear whether the AAA's Supplementary Rules for Class Arbitrations would apply in place of these fee schedules. Those Supplementary Rules set preliminary filing fees at $3,350.[7] Kumar Decl., Ex. 7, § 11(a). Finally, the record is unclear whether the $300 filing fee that Defendants cite would apply to this case in place of any of these fee schedules. Defs.' Reply Mem. of Law at 7.

---

[7] The basis for Plaintiff's estimate that his filing fees will be $3,500 is unclear. *See* Pl.'s Mem. of Law at 11. Plaintiff appears to argue that the Supplemental Rules would apply, but those rules set filing fees at $3,350. Kumar Decl., Ex. 7, § 11(a).

In light of the ambiguity in this record, Plaintiff has not carried his burden of proving that arbitration would be prohibitively expensive or impair the vindication of his statutory rights. *See Green Tree*, 531 U.S. at 91–92; *Stewart*, 201 F. Supp. 2d at 293 (court refused to invalidate a cost-sharing provision because it was "by no means . . . inevitable" that plaintiff would be forced to bear high costs in arbitration); *Mildworm v. Ashcroft*, 200 F. Supp. 2d 171, 180 (E.D.N.Y. 2002) ("[Because] the record is not adequate for this Court to determine how large the costs of arbitration will be . . . . this Court cannot conclude on the present record that the cost-sharing provision constitutes a barrier to the vindication of [the plaintiff's] statutory rights."); *Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 355 (S.D.N.Y. 1999) ("At this point in the litigation it is not clear how large the fees of the arbitration will be or whether plaintiff will be required to pay any portion of it, and, therefore, this Court cannot conclude that the payment of fees will constitute a barrier to the vindication of [the plaintiff's] statutory rights."). The Court will leave the interpretation of the cost-sharing provision to the arbitrator. If the arbitrator imposes costs on Plaintiff that would prevent the effective vindication of his statutory rights, Plaintiff may raise those issues upon enforcement of the arbitral award. *See Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 330–31 (S.D.N.Y. 2003); *Mildworm*, 200 F. Supp. 2d at 179–80; *Arakawa*, 56 F. Supp. 2d at 354–55; *Howard*, 36 F. Supp. 2d at 186–87 ("In an effort to further the liberal policy favoring arbitration agreements . . . the Court leaves the vindication of [the plaintiff's] statutory rights to the arbitrator." (internal quotation marks and citations omitted)).[8]

---

[8] As a final matter, Plaintiff argues that the Arbitration Agreement is unenforceable because it is unconscionable. Pl.'s Mem. of Law at 8–12. This argument fails. To void a contract on grounds of unconscionability, a party must show that the contract is both "procedurally" and "substantively" unconscionable. *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)). Plaintiff relies solely on the Agreement's 60-day notification period and the cost-sharing provision to prove substantive unconscionability. *See* Pl.'s Mem. of Law at 10–12. In light of the Court's decision to sever the Agreement's 60-day notification period and the ambiguity over the cost-sharing provision, Plaintiff is unable to show substantive unconscionability and, thus, unable to void the Agreement on this basis. *See Ragone*, 595 F.3d at 121.

### E. This Action Is Stayed Pending Arbitration

It is settled law in the Second Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [has been] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Although Plaintiff has not specifically requested a stay, the Court finds that one is appropriate in light of the Court's decision to sever the Arbitration Agreement's 60-day notification provision. The Court will retain jurisdiction over this action to enforce the arbitral award, if necessary.

### CONCLUSION

For all the foregoing reasons, the Court GRANTS Defendants' motion to compel arbitration, subject to the severance of the 60-day notification period in the Arbitration Agreement. This action is STAYED pending arbitration. The parties must submit quarterly updates on the status of the arbitration proceeding. The first such update is due **June 1, 2018**. Subsequent updates are due every three months, on the first business day of the applicable month.

The Clerk is respectfully directed to close the open motions at Dkts. 19 and 28.

**SO ORDERED.**

Date: **May 11, 2018**
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**